**W. PAT CROW FORGINGS, INC. and Les Cathey, Appellants,**

v.

**Oscar CASAREZ, Appellee.**

**No. 2–87–100–CV.**

Court of Appeals of Texas,
Fort Worth.

March 23, 1988.

Rehearing Denied May 18, 1988.

Gardere & Wynne, Robert E. Luxen, and Lani S. Shelton, Dallas, for appellants.

Michael Logan Ware, Fort Worth, Robert W. Rickard, Arlington, for appellee.

Before BURDOCK, JOE SPURLOCK, II and LATTIMORE, JJ.

## OPINION

BURDOCK, Justice.

Appellants, W. Pat Crow Forgings (Pat Crow Forgings) and Les Cathey, bring this appeal from a judgment by the 236th District Court in which the appellants were held to be in breach of an employment contract. In four points of error, the appellants assert that the court below was in error because the appellee was terminable at will.

We affirm.

Appellee had been employed at Pat Crow Forgings since 1954. In August 1981, appellee held the position of hammer operator. As a hammer operator, appellee was a member of the International Brotherhood of Boilermakers Local 96, a local union. The union had a collective bargaining agreement with Pat Crow Forgings which protected the appellee's employment rights.

In August 1981, appellee was approached by Byron Gardner, who was the president of Pat Crow Forgings at that time. Gardner offered appellee a job as shop supervisor; however appellee was hesitant to relinquish his union protection to take the management position. As a result of this apprehension, Gardner and the appellee negotiated an agreement which was embodied in a letter sent to appellee on August 14, 1981, which provided:

Dear Oscar:

Confirming our discussion on August 13, 1981, you accepted the position of Forge Shop Supervisor on June 22, 1981. We have the understanding that in the event you find the job unsuitable, or the Company finds your performance substandard, you have the right to revert back to a Hammer Operator.

Sincerely,

/s/ Byron E. Gardner

President

In 1984, during the appellee's term as shop supervisor, the Boilermakers union went on strike. The appellee had retained his union membership regardless of his management position; nonetheless he did not join the other union members in the strike. Pat Crow Forgings hired a number of replacement workers during the strike. The appellee did not approve of the hiring of these employees, feeling that several of them were not qualified.

During the strike, several of the appellee's supervisors found that he had changed the forging methods without authorization. The actions of the appellee were significant departures from established procedure and resulted in substantial losses to Pat Crow Forgings. The appellee was discharged from Pat Crow Forgings in May of 1985 because of this digression.

Shortly thereafter, appellee sent a letter to Les Cathey, the new president of Pat Crow Forgings. In the letter, appellee requested that he be reinstated as a hammer operator, referring Cathey to his agreement with Byron Gardner concerning appellee's right to return to his former position. Cathey informed appellee by letter that the request was being considered. Appellee was never hired as a hammer operator, but in November of 1985, he was hired as a grinder for Pat Crow Forgings. The position of grinder is lower in pay and seniority than is a hammer operator.

In March 1986, appellee brought suit in the court below alleging that Pat Crow

Forgings and Les Cathey had breached an employment contract embodied in the August 14, 1981 letter sent from Byron Gardner to the appellee. In his suit, appellee sought past wages, reinstatement as a hammer operator and attorney's fees. After a bench trial, the court issued a judgment on February 2, 1987, ruling that Pat Crow Forgings and Les Cathey had breached a legally binding agreement. The judgment awarded appellee damages in the amount of $25,878.08 for past wages and attorney's fees. The court did not award damages for future wages, nor did it order reinstatement by the appellants.

In four points of error, the appellants contend that the trial court erred in finding that the appellee had a legally binding agreement with the appellants. According to the appellants, since the letter of August 14 sent from Gardner to appellee did not contain a definite term or period of time for employment, the appellee did not as a matter of law have a binding employment contract with the appellants, since under the law of this state any employee whose contract does not state a specific period of time of employment is terminable at will.

▇ In Texas, the courts have generally provided that, absent a specific contract term to the contrary, an employment contract providing for an indefinite term of service may be terminated at will by either the employer or the employee. *See East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (Tex.1888); *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536, 538 (Tex.App. —Corpus Christi 1982, no writ); *Watson v. Zep Mfg. Co.*, 582 S.W.2d 178, 179 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.). Generally, the party relying on the contract has the burden of establishing facts and circumstances which provide for some tenure of employment or a specific contrary term. *See Horn v. Builders Supply Company of Longview*, 401 S.W.2d 143, 149 (Tex.Civ. App.—Tyler 1966, writ ref'd n.r.e.).

▇ Texas case law clearly provides that a specific contract term may alter an employee's at-will status. *See Reynolds*, 644 S.W.2d at 538. Therefore, we must determine whether there exists a contract term

in the appellee's employment agreement which would limit the appellant's ability to terminate appellee at will.

A review of the letter sent to appellee from Byron Gardner reveals that the parties had agreed that the appellee would advance to the position of forge shop supervisor on June 22, 1981. The letter further reveals that the parties had agreed that if appellee was to be removed from the supervisor's position, appellee had the right to return to his past job as a hammer operator.

We need go no further in addressing this issue. The August 14, 1981, letter clearly reveals that Gardner had limited the right of the appellants to terminate the appellee outright. Instead, Pat Crow Forgings by its own agreement was limited to demoting the appellee to the position of hammer operator. This provision in the August 14 letter is a specific contract term which removes the appellee's employment position from an "at-will" status. Once the appellee is demoted, any termination from that position is controlled by the collective bargaining agreement between the appellants and the Boilermakers Union which applies to the position of hammer operator.

We find that the appellee had an enforceable contract with the appellants which gave appellee the right to return to the position of hammer operator after he was terminated as forge shop supervisor. We therefore overrule appellant's points of error one through four.

By a cross point of error, the appellee urges that the trial court erred in failing to award appellee damages for future lost wages. The trial court refused to award damages for future wages on the grounds that such an award was "too speculative." By reply point, the appellant urges that the appellee waived any right to complain of the judgment because the appellee failed to object at the trial level to the court's refusal to award the lost future wages by means of a timely objection or motion.

▇ Generally, where an employee is wrongfully discharged, the employee may recover for all wages past due and for all

future promised wages, less what can be earned by reasonable effort in similar employment. *See Lone Star Steel Co. v. Wahl,* 636 S.W.2d 217, 221 (Tex.App.—Texarkana 1982, no writ). Upon review of the record, it appears that the appellee did prove lost future wages in the amount of $43,468,80. The trial court made such a finding in its findings of fact and conclusions of law.

However, the appellant's reply to the appellee's cross-point is well taken. As a general rule, an appellee must first have presented his complaint to the trial court in order to preserve his complaint for appeal. *See West Texas Utilities Co. v. Irvin,* 336 S.W.2d 609, 610 (Tex.1960); *City of Dallas v. Moreau,* 718 S.W.2d 776, 782 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). The appellee's complaint to the trial court may take the form of a motion to reform the judgment or an exception to the judgment. *See generally Dalton v. Don J. Jackson, Inc.,* 691 S.W.2d 765 (Tex.App.—Austin 1985, no writ).

From the record, the *appellant* clearly entered a motion for new trial or to reform the judgment. The appellee filed a reply to this motion, but nowhere in his reply does the appellee complain of the judge's refusal to award him damages for future wages. In fact, in the proposed findings of fact and conclusions of law filed by the appellee, the appellee included a provision for the judge's refusal to award damages for future lost wages. The record contains no evidence that the appellee by some means appraised the trial judge of his alleged error and afforded him an opportunity to cure such error. We therefore find that the appellee waived any error by the trial court concerning the refusal to award compensation for future lost wages. The appellee's cross-point is overruled.

The judgment of the court below is affirmed.